# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LONE STAR DOCUMENT MANAGEMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NEXTPOINT INC.,<br><br>Defendant. | C.A. No.: TBD<br><br>**JURY TRIAL DEMANDED** |

**DECLARATION OF JOSEPH DANIEL ELAM**

I, Joseph Daniel Elam, declare as follows:

**Background**

1. I am an expert and technology consultant for information governance programs including records management, sensitive information, and country-specific regulations. I have been a U.S. technical expert to the International Standards Organization (ISO), a past ANSI C15.9 OCR Standards Chair, and a frequent industry author and speaker. I bring over 30 years of experience in a diverse set of technologies and fields including information governance, enterprise content management (ECM), government, insurance, financial services, mergers and acquisitions (M&A), document imaging, document management, records management, and optical character recognition (OCR).

2. I studied Physics from 1983 to 1985 at the Virginia Tech University in Blacksburg, Virginia.

3. Specific professional engagements that I believe relevant to the subject matter in this case include:

- **Epiq**
  **September 2022-present** – Expert and consultant at Epiq, supporting customers' information governance needs with industry experts on data security, governance, and compliance technologies. Epiq is a global technology-enabled services leader to the legal industry and corporations, taking on large-scale, complex tasks for corporate counsel, law firms, and business professionals with efficiency and clarity. Epiq streamlines the administration of legal department and business operations, class action and mass tort, eDiscovery, regulatory, compliance, restructuring, and bankruptcy matters. Epiq subject-matter experts and technologies create efficiency through expertise to high-performing clients around the world.
- **ActiveNav**
  **2019-2021** – Executive at ActiveNav, providing data discovery solutions for compliance and information governance. ActiveNav cloud platform deploys to build a comprehensive data inventory, presented in dashboards that are designed to highlight governance issues (such as spillage, over-retention or redundant, obsolete or trivial data) quickly. ActiveNav is a recognized a leader in the governance of unstructured data and provides compliance to data owners and information professionals in a platform as part of a sustainable information governance program.
- **NVISIONx**
  **2019** – Vice President at NVISIONx, a data risk intelligence platform that fuses business data and cyber intelligence, empowering companies to gain enhanced control of their enterprise data and its risk. NVISIONx provides a unique approach to enterprise data inventory and classification through ML/AI and interactive visual analytics and enables business and IT leaders to collaborate on which data to protect or to purge. NVISIONx drives better business outcomes by proactively reducing risk, simplifying compliance, and increasing operational efficiencies saving costs.

- **Contoural**

  **2015-2019** – Executive at Contoural, providing strategic Information Governance consulting services, including Records and Information Management, Litigation Readiness and Control of Privacy and Sensitive Information. Contoural provides a full suite of innovative and high-value consulting services to help clients develop, launch and execute comprehensive Information Governance initiatives.

- **RSC Solutions**

  **2011-2012** – Chief Operating Officer at RSC Solutions, providing IT services focused on regulated industries such as financial services and pharmaceuticals. Heavy emphasis on ECM, business intelligence, and infrastructure implementation.

- **IQBG Inc**

  **2009-2011** – VP of Operations at IQ Business Group, which is specialized in helping organizations implement information governance programs and provides a broad range of consulting services in strategy, operations, organization, change management, information technology, systems engineering, systems integration and program management.

- **Gimmal Group**

  **2008-2009** – Managing Director for Operations in Richmond, VA and Washington, DC. Also responsible for ECM strategy consulting across the country.

- **eVisory**

  **2002-2007** – Founder and executive at eVisory, a consulting firm for ECM including document imaging, document management, forms processing, OCR, records, and content management technologies.

- **IMERGE Consulting**

  **1991-2001** – Founder and partner at IMERGE Consulting, an industry-leading records management, information governance, digital content management and process improvement consulting firm with offices in the U.S. and Canada.

- **Elam, Elbert, & Barley**

  **1988-1991** – President at Elam, Elbert, & Barley, a professional services firm focused on custom telecommunications solutions and integrated document management.

- **Advanced Technology (later PRC)**
  **1986-1989** – IT Manager, responsible for R&D programs related to scanning, barcodes, voice recognition, smart tags, and white collar productivity using office automation tools.

4. By virtue of the above experience, I have gained a detailed understanding of the technology and methodology relevant to issues in this case. In addition, my experience with information governance, enterprise content management (ECM), document imaging, document management, records management, and optical character recognition (OCR) further qualifies me to provide opinions in this case.

**Person of Ordinary Skill**

5. Because of the level of complexity and emerging aspect of the field of systems of proofing electronic documents delivered over a computer network at the time of the invention, circa 1998, I believe a POSITA will require extensive experience in computer networking protocols, portable document formats, and software solutions which allow users to exchange computer files delivered over a computer network. Therefore, a person of ordinary skill in the art (POSITA) with respect to U.S. Patent No. 6,918,082 ("the '082 patent") would have (a) a Bachelor of Science degree in computer science, software engineering, or computer engineering (or a related academic field), and at least three additional years of work experience in the design and development of systems of document management for documents delivered over a computer network, or (b) at least five years of work experience and training in the design and development of systems of document management for documents delivered over a computer network.

6. In view of my qualifications, experience, and understanding of the subject matter of the claimed invention, I believe that I meet the above-mentioned criteria and consider myself a

person with at least ordinary skill in the art pertaining to the ’082 patent. Specifically, as of the time of the inventions of this patent, I met or exceeded this level of ordinary skill.

**The ’082 Patent**

7. I have reviewed the ’082 patent including claim 16. My statements below are directed to considerations around claim 16. Claim 16 involves, among other things, the program which “retrieves a record corresponding to the requested document and assembles a URL pointing toward the document from data in the record.”

**Technology Background and Problem to be Solved**

8. The ’082 patent describes “software and systems that allow multiple users to collaboratively proof, annotate, and edit multiple versions of documents over a computer network” (’082 at 1:6-8). The systems of the ’082 patent include “a system which simultaneously displays multiple versions of portable format document over a computer network” (*Id.* at 2:61-64), “for simultaneously displaying a history of comments from collaborative reviewers together with each version of a portable format document” (*Id.* at 3:2-4) and/or “is capable of providing this functionality to multiple reviewers of multiple versions of multiple documents” (*Id.* at 3:6-8).

9. The ’082 patent describes an embodiment of the invention as follows:

> a system for proofing electronic documents delivered over a network. The system comprises a plurality of electronic documents in portable document file format, a computer connectable to the network for receiving the plurality of portable format documents together with at least one associated proofer identifier, a program executing on the computer for assigning a version number to each of the plurality of received portable format documents, and a database accessible by the computer for storing the documents and associated version numbers. The computer receives requests, from proofers presenting the proofer identifier, to review a portable format electronic document, and the program retrieves and formats the requested document for display.

(’082 at 3:10-23.)

10. The '082 patent recognizes problems with third-party proprietary document processing systems, existing at the time of the invention, in that "[e]xchanging electronic files between document creator and the person or persons who must proof and approve the document ***often necessitates that both parties use the exact same software version, often running on the same computer operating system***" ('082 at 1:32-36).[1] The '082 patent further recognizes that although these programs that used the exact same software version might provide limited versioning capabilities, they ***generally utilized proprietary, not portable document formats***, typically ***did not enable simultaneous display and/or control of multiple document versions, and often did not include comment history capabilities***. (*Id.* at 1:51-54.)

11. The '082 patent notes that "portable document formats" also existed at the time of the invention to allow document creators and document approvers (or proofreaders) to exchange computer files without regard to the original authoring software or computer platform. ('082 at 1:55-59.) However, as explained in the '082 patent, although portable document formats alleviated some of the platform issues, release dependence issues and proprietary format issues of the third-party proprietary document processing systems, ***problems persisted regarding managing and tracking multiple versions of documents being distributed to and proofed by multiple parties concurrently and asynchronously,*** (*Id.* at 2:13-17) and document delivery systems at that time did ***"not provide features for collaborative production and review of documents"*** (*Id.* at 2:47-48).

12. The '082 patent further summarizes then-existing problems in the operation of operating over computer networks:

> [t]he disclosed prior art systems and methodologies provide methods for the delivery of portable format documents over computer networks, but ***fail to***

[1] Unless otherwise indicated, emphasis in this Declaration has been added.

> ***provide a way to automatically display or track multiple versions of the electronic documents, to review and add to a history of comments about the particular version of the document displayed, to alter the current/preferred version of the document, or to simultaneously-display a particular document version and its current history***. ***Nor*** do the disclosed prior art systems ***enable these capabilities for simultaneously managing multiple different projects and documents***.

('082 at 2:49-59.)

13. The system of claim 16 in the '082 patent overcomes the prior art problems of failing to provide a way to: (a) display or track multiple versions of the electronic documents, (b) review and add to a history of comments about a particular version of the document displayed, and/or (c) simultaneously-display a particular document version and its current history. The system of claim 16 solves these problems by storing a database of portable format electronic documents with a proofer identifier; receiving a plurality of comments, each concerning a particular one of the portable format documents; associating and storing the received plurality of comments together with the particular portable format electronic documents; receiving a request from a proofer presenting the proofer identifier, to review a particular portable format electronic document; retrieving a record corresponding to the requested document and assembling a URL pointing toward the document from data in the record; and retrieving and formatting the requested document together with the associated plurality of comments for simultaneous display to permit review.

**The Invention of Claim 16 of the '082 Patent Results in Improved Performance and Operation of Computers In Electronic Document Proofing Systems**

14. The invention recited in claim 16 of the '082 patent improves the performance and operation of computers in electronic document proofing systems, by increasing the efficient utilization of the computers in the system and lowering the resources and time required to

complete a cycle of proofing electronic documents delivered over a network. As emphasized in the ’082 patent:

> ***The primary purpose of the invention is to facilitate electronic document distribution, proofing and communication*** between a document creator and a person or people responsible for approving the document or those who require final receipt of finished documents.

(’082 at 6:60-64.)

15. Claim 16, when considered as a whole, includes several elements that together improve the performance or operation of computers in systems for proofing electronic documents delivered over a network. These elements include: (a) a database of portable format electronic documents stored together with at least one proofer identifier, (b) a computer connectable to the network for receiving a plurality of comments, each concerning a particular one of the portable format documents, and (c) a program executing on the computer for associating and storing the received plurality of comments together with the particular portable format electronic documents. The recited computer is configured to receive a request, from a proofer presenting the proofer identifier, to review a particular portable format electronic document. The recited program is configured to retrieve a record corresponding to a requested document and assemble a URL pointing toward the document from data in the record and to retrieve and format the requested document together with the associated plurality of comments for simultaneous display to permit review. Together these elements provide specific technical solutions to challenges when proofing electronic documents delivered over a network.

16. The elements in claim 16 are rooted in real-world electronic document proofing technologies. They require specialized hardware and software implementations, such as algorithms for: (a) associating and storing the received plurality of comments together with the particular portable format electronic documents; (b) receiving a request, from a proofer

presenting the proofer identifier, to review a particular portable format electronic document; and (c) retrieving and formatting the requested document together with the associated plurality of comments for simultaneous display to permit review. The combination of these features improves the performance and operation of computers for electronic document proofing, offering a solution to provide more efficient document distribution, proofing and communication between one or more document creators and reviewers, including those responsible for approving the document.

**Claim 16 of the '082 Patent Recites a Collection of Elements That Was Unconventional at the Time of the Invention**

17. The collection of elements in claim 16 of the '082 patent, include: (a) a database of portable format electronic documents stored together with at least one proofer identifier, (b) a computer connectable to the network for receiving a plurality of comments, each concerning a particular one of the portable format documents, and (c) a program executing on the computer for associating and storing the received plurality of comments together with the particular portable format electronic documents in which the recited computer is configured to receive a request, from a proofer presenting the proofer identifier, to review a particular portable format electronic document and the recited program is configured to retrieve a record corresponding to a requested document, assemble a URL pointing toward the document from data in the record, and to retrieve and format the requested document together with the associated plurality of comments for simultaneous display to permit review. This collection of elements, presented together in claim 16, was unconventional at the time, as their collective features were neither routine nor conventional in software and systems for proofing electronic documents in 1998.

18. The '082 patent expressly recognizes the unconventional nature of the collection of elements in claim 16, including a feature for formulating a URL for displaying a document:

> Computer 60 utilizes ***a unique methodology*** for storing files on database 64 which enables system 50 to keep track of numerous versions of numerous documents in numerous projects for numerous clients. A hierarchy of directories is used on database 64 and/or application server 78 to store the actual documents. ***The directory hierarchy is generated from information about a particular document and is also used to formulate the URL*** for display of the document versions to proofers through a web browser. ***The storage methodology relies on the dynamic interaction between 3 types of entities: a relational database, a directory tree file storage system, and URL strings.***

(’082 at 5:10-22.)

19. The collection of elements in claim 16 represents an advance that was unconventional at the time of the invention and solved problems present in the prior art. In its “Background of the Invention” section, the ’082 patent recognizes:

> The disclosed prior art systems and methodologies provide methods for the delivery of portable format documents over computer networks but fail to provide a way. . . to review and add to a history of comments about the particular version of the document displayed, . . . ,or to simultaneously-display a particular document version and its current history. Nor do the disclosed prior art systems enable these capabilities for simultaneously managing multiple different projects and documents.

(*Id.* at 2:49-59.)

**Claim 16 of the ’082 Patent Does Not Preempt the Field of Software or Systems For Proofing Electronic Documents Delivered Over a Network**

20. Claim 16 of the ’082 patent does not preempt the field of software or systems for proofing electronic documents delivered over a network. For example, claim 16 does not preempt all uses of a database of portable format electronic documents stored together with at least one proofer identifier. Claim 16 does not preempt a computer connectable to a network for receiving a plurality of comments, each concerning a particular one of portable format documents. Claim 16 does not preempt a program executing on a computer for associating and storing a received plurality of comments together with a particular portable format electronic document. None of these concepts, functioning alone, is preempted. On the contrary, claim 16

requires all of the elements in combination. Furthermore, the collection of elements in claim 16 provide a specific combination of features. The computer recited in claim 16 is configured to receive a request, from a proofer presenting the proofer identifier, to review a particular portable format electronic document. The program recited in claim 16 is configured to retrieve a record corresponding to a requested document and assemble a URL pointing toward the document from data in the record and to retrieve and format the requested document together with the associated plurality of comments for simultaneous display to permit review. None of these concepts, functioning alone, is preempted.

21. In view of the foregoing, the invention of claim 16 of the ’082 patent is directed to technological solutions to technological problems which improved the operation of computers in electronic document proofing systems at the time of the invention. In addition, claim 16 recites an unconventional collection of elements that address the prior art problems by implementing the above solutions. Furthermore, claim 16 does not preempt the field of software and systems for proofing electronic documents delivered over a network, or any other substantial field.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 1, 2026

By: ______________________

Joseph Daniel Elam